**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

CRYSTAL L. MONTGOMERY,      )
                                      )
          Plaintiff,        )
                                      )
      v.                       )        02: 05cv0821
                                        )
JO ANNE B. BARNHART,        )
COMMISSIONER OF SOCIAL SECURITY,  )
                                      )
          Defendant.      )

**MEMORANDUM OPINION AND ORDER OF COURT**

May 25, 2006

**I.      Introduction**

Plaintiff, Crystal L. Montgomery, brought this action pursuant to 42 U.S.C. §§ 405(g) and

1383(c) for judicial review of the final determination of the Commissioner of Social Security

("Commissioner") which denied her applications for disability insurance benefits ("DIB") and

supplemental security income ("SSI") under Titles II and XVI of the Social Security Act ("Act"),

42 U.S.C. §§ 401-433, 1381-1383(f).

**II.     Background**

    **A.      <u>Facts</u>**

Plaintiff was born on December 12, 1975.  (R. 400).  She graduated from high school and

has past relevant work experience as a bus aide for handicapped children, a sandwich maker for

Subway, and a housekeeper for a nursing home.  (R. 400-404, 408).  The vocational expert

testified that these past jobs had exertional demands which range from light to medium and were

unskilled in nature.

1

Plaintiff alleges disability as of June 8, 2002, due to bipolar disorder, post-traumatic stress disorder, and other related mental impairments.  (R. 15, 394-306).  The record reflects that Plaintiff has engaged in "disqualifying" substantial gainful activity since her alleged onset date. (R. 15, 400-404).[1]

**B.     Procedural History**

Plaintiff initially filed applications for DIB and SSI on May 27, 2003, in which she claimed total disability since June 8, 2002, due to psychological problems.  (R. 382).  The state agency denied the applications on September 17, 2003.  (R. 34).  An administrative hearing was held on June 21, 2004, before Administrative Law Judge David J. Kozma ("ALJ").  (R. 391).  Plaintiff was represented by counsel and testified at the hearing.  (R. 393, 407).  Norma Siebert, Plaintiff's mother, and Samuel M. Edelman, M.Ed., an impartial vocational expert, also testified at the hearing.  (R. 393, 407).  On December 22, 2004, the ALJ rendered a decision which was unfavorable to Plaintiff in which he found that Plaintiff retained the ability to perform a wide range of low stress work and, therefore, was not "disabled" within the meaning of the Act.  (R. 14-24).

The ALJ's decision became the final decision of the Commissioner on April 13, 2005, when the Appeals Council denied Plaintiff's request to review the decision of the ALJ.  (R. 5-8).

On June 15, 2005, Plaintiff filed her Complaint in this Court in which she seeks judicial review of the decision of the ALJ.  The parties have filed cross-motions for summary judgment.

---

[1]     Plaintiff testified at the administrative hearing that she was currently working as a school bus aide on a van/bus with three to eight children.  She works approximately three hours per day, Monday through Friday.  The ALJ found that Plaintiff was "engaging in disqualifying substantial gainful activity . . ."  (R. at 15)

Plaintiff contends that the ALJ erred when he (i) disregarded the medical opinion of Plaintiff's treating physician, (ii) determined that Plaintiff's impairments did not meet or equal one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4, and (iii) determined that Plaintiff was not disabled as she could perform low stress work.  The Commissioner contends  that the decision of the ALJ should be affirmed as it is supported by substantial evidence.  The Court agrees with the Commissioner and will therefore grant the motion for summary judgment filed by the Commissioner and deny the motion for summary judgment filed by Plaintiff.

**III.     Legal Analysis**

      A.     <u>Standard of Review</u>

The Act limits judicial review of disability claims to the Commissioner's final decision.  42 U.S.C. § 405(g).  If the Commissioner's finding is supported by substantial evidence, it is conclusive and must be affirmed by the Court.  42 U.S.C. § 405(g); *Schaudeck v. Comm'n of Soc. Sec. Admin.*, 181 F. 3d 429, 431 (3d Cir. 1999).  The Supreme Court has defined "substantial evidence" as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389 (1971); *Hartranft v. Apfel*, 181 F. 3d 358, 360 (3d Cir. 1999).  It consists of more than a mere scintilla of evidence, but somewhat less than a preponderance of the evidence.  *Rutherford v. Barnhart,* 399 F.3d 546, 552 (3d Cir. 2005).

When resolving the issue of whether an adult claimant is or is not disabled, the Commissioner utilizes a five-step sequential evaluation.  20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4) (2005).  This process requires the Commissioner to consider, in sequence, whether a claimant (1) is working, (2) has a severe impairment, (3) has an impairment that meets or equals

3

the requirements of a listed impairment, (4) can return to his or her past relevant work, and (5) if

not, whether he or she can perform other work.  *See* 42 U.S.C. § 404.1520; *Burnett v.*

*Commissioner of Social Security*, 220 F. 3d 112, 118-19 (3d Cir. 2000) (*quoting Plummer v. Apfel*,

186 F. 3d 422, 428 (3d Cir. 1999)).

To qualify for disability benefits under the Act, a claimant must demonstrate that there is

some "medically determinable basis for an impairment that prevents him or her from engaging in

any substantial gainful activity for a statutory twelve-month period." *Kangas v. Bowen*, 823 F. 2d

775, 777 (3d Cir. 1987); 42 U.S.C. § 423 (d)(1) (1982).  This may be done in two ways:

> (1) by introducing medical evidence that the claimant is disabled *per se* because he or she
> suffers from one or more of a number of serious impairments delineated in 20 C.F.R.
> Regulations No. 4, Subpt. P, Appendix 1.  *See Heckler v. Campbell*, 461 U.S. 458 (1983);
> *Stunkard*, 841 F. 2d at 59; *Kangas*, 823 F. 2d at 777; or,
>
> (2) in the event that claimant suffers from a less severe impairment, by demonstrating that
> he or she is nevertheless unable to engage in "any other kind of substantial gainful work
> which exists in the national economy. . . ." *Campbell*, 461 U.S. at 461 (citing 42 U.S.C. §
> 423 (d)(2)(A)).

In order to prove disability under the second method, a claimant must first demonstrate the

existence of a medically determinable disability that precludes plaintiff from returning to his or her

former job.  *Stunkard*, 841 F. 2d at 59; *Kangas*, 823 F. 2d at 777.  Once it is shown that claimant is

unable to resume his or her previous employment, the burden shifts to the Commissioner to prove

that, given claimant's mental or physical limitations, age, education and work experience, he or

she is able to perform substantial gainful activity in jobs available in the national economy.  20

C.F.R. § 404.1560(c)(2); 416.960(c)(2).  *See also Rutherford,* 399 F.3d at 551.

In this case, the ALJ determined that Plaintiff was not disabled within the meaning of the

Act at the fifth step of the sequential evaluation process.  (R. 24).  In making this determination,

the ALJ concluded that Plaintiff was capable of performing low stress work in which she would make few decisions, have only occasional contact with co-workers, and perform only routine and repetitive work.  (R. 24).  The ALJ further concluded that there were jobs existing in significant numbers in the national economy which Plaintiff could perform.  (R. 24).

**B.    Discussion**

As set forth in the Act and applicable case law, this Court may not undertake a de novo review of the Commissioner's decision or re-weigh the evidence of record.  *Rutherford,* 399 F.3d at 552; *Monsour Medical Center v. Heckler*, 806 F. 2d 1185, 1190 (3d Cir. 1986), *cert. denied*, 482 U.S. 905 (1987).  The Court must simply review the findings and conclusions of the ALJ to determine whether they are supported by substantial evidence.  42 U.S.C. § 405(g); *Schaudeck v. Comm'n of Soc. Sec. Admin.*, 181 F. 3d 429, 431 (3d Cir. 1999).

1.    *The ALJ Properly Determined that the Medical Opinion of Charles Bryan Norton, M.D., Was Not Entitled to Controlling Weight*

Plaintiff's first argument is that the ALJ erred when he did not give controlling weight to a form Questionnaire Regarding Medical Condition, completed by Charles Bryan Norton, M.D., her treating psychiatrist, in which Dr. Norton expressed the opinion that Plaintiff was unable to sustain full-time employment due to her mental impairments.

If "a treating source's opinion on the issue(s) of the nature and severity of [the claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is <u>not inconsistent</u> with the other substantial evidence in [the claimant's] case record," it is to be accorded "controlling weight."  20 C.F.R. § 404.1520(d)(2) (emphasis added).

Even when the opinions of treating physicians are not given controlling weight, they are to be accorded significant weight.  This is because "these sources are likely to be the medical professionals most able to provide a detailed, longitudal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations."  *Fargnoli v. Massanari*, 247 F. 3d 34, 43 (3d Cir. 2001).

However, if the ALJ finds that the treating physician's opinion is outweighed by conflicting medical evidence in the record, the ALJ may reject it.  *Newhouse v. Heckler*, 753 F. 2d 283, 286 (3d Cir. 1985).  "An ALJ may reject a treating physician's opinion outright only on the basis of contradictory medical evidence, but may afford a treating physician's opinion more or less weight depending upon the extent to which supporting explanations are provided."  *Plummer v. Apfel*, 186 F. 3d 422, 429 (3d Cir. 1999).

In the instant case, Plaintiff contends that the Commissioner was required to give controlling weight to the Questionnaire Regarding Medical Condition completed by Dr. Norton on May 25, 2004.   In that document, Dr. Norton expressed the view that Plaintiff was unable to sustain full-time employment because she suffered from undue stress and anxiety.  (R. 362). However, Dr. Norton did not provide any supporting explanation for his opinion.

Where an opinion as to disability is contained in a form report unaccompanied by a thorough written report, its reliability is suspect.  *See Brewster v. Heckler*, 786 F.2d 581, 585 (3d Cir. 1986).  To the extent that Plaintiff is correct that a treating physician's findings and opinions are entitled to greater weight than attributed to it by the ALJ, the Court is guided by the

pronouncement of the Court of Appeals for the Third Circuit in *Adorno v. Shalala*, 40 F.3d 43 (3d

Cir. 1994):

> A statement by a plaintiff's treating physician supporting an assertion that [she] is "disabled" or "unable to work" is not dispositive of the issue.  The ALJ must review all the medical findings and other evidence presented in support of the attending physician's opinion of total disability.  In doing so, the ALJ must weigh the relative worth of a treating physician's report against the reports submitted by other physicians who have examined the claimant.

*Id*. at 47-48 (citations omitted); 20 C.F.R. § 404.1527(e).  The determination of disability, which is

a legal determination, is ultimately for the Commissioner and not a medical source.  20 C.F.R. §§

404.1527(e).  See also *Mason v. Shalala*, 994 F. 2d 1058, 1065 (3d Cir. 1993) ("[f]orm reports in

which a physician's obligation is only to check a box or fill in a blank are weak evidence at best.")

The administrative record reflects that the ALJ examined all of the medical findings and

evidence of record, including Plaintiff's testimony at the hearing.  The ALJ acknowledged that Dr.

Norton had indicated on the Questionnaire that Plaintiff was unable to work; however, the ALJ

found that the opinion of Dr. Norton was contrary to the other evidence of record.

The ALJ provided a thorough explanation as to why he found Dr. Norton's conclusions to

be less than fully credible.  (R. 15-24).  For example, in August, 2002, Plaintiff began working at

Subway, putting in between forty and forty-five hours per week.  (R. 327).  Dr. Norton noted on

October 7, 2002, that Plaintiff preferred working to sitting at home.  (R. 327). Dr. Norton's own

records indicated that, as of January 17, 2003, Plaintiff was "sustaining a complete remission of

her mood disorder." (R. 17, 326).  At that time, Plaintiff was hoping to be promoted to a

management position.  (R. 326).  Plaintiff's own testimony established that she was working as a

bus aide at the time of the hearing.  (R. 400).

7

Further, the ALJ found that Dr. Norton's conclusion of disability was directly contradicted by Raymond F. Dalton, Jr., Ph.D., the Commissioner's reviewing psychologist, who determined that the limitations which resulted from Plaintiff's impairments did "not preclude the claimant from meeting the basic mental demands of competitive work on a sustained basis." (R. 343). Dr. Dalton concluded that Plaintiff had "mild" restriction of activities of daily living, "mild" difficulties in maintaining social functioning, and "moderate" difficulties in maintaining concentration, persistence, or pace.

The Court finds that the ALJ observed the proper legal standards in evaluating the opinion of Dr. Norton. Therefore, the Court concludes that there is substantial evidence of record to support the ALJ's decision to reject Dr. Norton's opinion that Plaintiff was unable to work.

2.   *The ALJ Properly Determined That While Plaintiff's Impairments Were Severe, Such Impairments Were Not Severe Enough to Meet or Medically Equal One of the Impairments Listed in Appendix 1, Subpart P, Regulations No. 4.*

Plaintiff's second argument is, in many respects, intertwined with her first. She asserts that if the opinion of Dr. Norton had been given controlling weight, it would have established that she suffered from affective and anxiety disorders, both of which are listed in 20 C.F.R. Regulations No. 4, Subpt. P, App. 1.

Plaintiff takes issue with the ALL's determination that her impairments did not meet, or medically equal, the affective disorders listed under 12.04 or the anxiety related disorders listed under 12.06. (Br. for Plaintiff 16-18); 20 C.F.R. Regulations No. 4, Subpt. P, App.1. The ALL found that Plaintiff's symptoms fulfilled the "A" criterion for both disorders, but also found that Plaintiff's symptoms did not meet the "B" criterion for each of the two disorders. (R. 20).

8

The "B" criterion for both of the two disorders is the same.  In order for a determination to be made that a claimant suffers from either of the relevant disorders, the claimant's impairments must result in at least two of the following: (1) marked restriction of activities of daily living; (2) marked difficulties in maintaining social functioning; (3) marked difficulties in maintaining concentration, persistence, or pace; or (4) repeated episodes of decompensation, each of extended duration.  20 C.F.R. Regulations No. 4, Subpt. P, App. 1.

On August 25, 2003, Dr. Dalton reported that Plaintiff had mild restriction of activities of daily living, mild difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence, or pace, and only one or two episodes of decompensation, each of extended duration.  (R. 354).  Nine months later, Dr. Norton reported in the Questionnaire Regarding Medical Condition that Plaintiff had marked restriction of activities of daily living, marked difficulties in maintaining social functioning, frequent deficiencies of concentration, persistence, or pace, and continual episodes of decompensation, each of extended duration.  (R. 366).

Plaintiff contends that the conflict between the two competing opinions should have been resolved in favor of that expressed by Dr. Norton, since he was her treating physician.  Instead, the ALL determined that Dr. Norton's opinion as expressed in the Questionnaire was inconsistent with his own finding that Plaintiff's mood disorder was in complete remission.  (R. at 326-27).  Further, the record reflects that although Dr. Norton believed that Plaintiff's mental impairments were of listing level severity, his own treatment notes indicate that Plaintiff was able to work on a full-time basis at Subway.

Although the Commissioner considers the opinions of treating sources when deciding whether a claimant's impairments meet or equal the criteria for a listed impairment, "the final responsibility for deciding [that issue] is reserved to the Commissioner." 20 C.F.R. § 404.1527(e)(2). The opinions of Plaintiff's treating sources are entitled to no "special significance" with regard to this determination. 20 C.F.R. § 404.1527(e)(3). The Court finds and rules that it was entirely proper for the ALL to rely on the findings of Dr. Dalton, particularly in light of the many activities in which Plaintiff had engaged during the relevant period of alleged disability.

Therefore, this Court agrees with the Commissioner's contention that the ALJ's determination that Plaintiff's impairments did not equal a listed impairment is supported by substantial evidence.

3.     *The ALL Properly Determined The Residual Functional Capacity of Plaintiff*

Plaintiff's final contention is that the ALL made an erroneous determination regarding her residual functional capacity. The ALL determined that Plaintiff "could tolerate only low stress work, make few decisions, have only occasional contact with others, and perform only routine and repetitive work." (R. 24). Plaintiff asserts that this finding was erroneous because it conflicted with Dr. Norton's opinion.

However, as discussed supra, the opinion of Dr. Norton was not entitled to controlling weight. The ALL considered all of the evidence in the record, including evidence that Plaintiff's mental impairments were being controlled effectively by medications. (R. 19). At the hearing, Plaintiff testified that she had worked as a bus aide and as a sandwich maker during the period of

10

alleged disability.  (R. 400-404).  For a brief period of time, Plaintiff held two jobs.  (R. 402).  In light of this testimony, the ALL was certainly not required to accept the conclusory determination by Dr. Norton that Plaintiff was disabled.

The vocational expert, Samuel Edelman, testified that low stress jobs included janitor jobs, office cleaner jobs, and hotel/motel cleaner jobs.  (R. 408).  He further testified that, in the national economy, there were in excess of 2 million janitorial jobs, 260,000 office cleaner jobs, and 128,000 hotel/motel cleaner jobs, and that a person working in any of these capacities would have only minimal interaction with co-workers, supervisors, or members of the public.  (R. 408-409).  Since Plaintiff was working as a bus aide at the time of the hearing, it is clear that the ALL was justified in finding that Plaintiff was capable of working in the capacities identified by the vocational expert.

The Court finds that the ALL considered all of the medical evidence of record and provided a thorough analysis for his determination that Plaintiff had the residual functional capacity to "tolerate only low stress work, make few decisions, have only occasional contact with others, and could perform only routine and repetitive work."  (R. 24)

## IV.    Conclusion

It is undeniable that Plaintiff has a number of impairments, and this Court is sympathetic and aware of the challenges that she faces in seeking and sustaining gainful employment.  Under the applicable standards of review and the current state of the record, however, the Court must defer to the reasonable findings of the ALL and his conclusion that Plaintiff is not disabled within

the meaning of the Social Security Act, and that she remains able to perform a significant range of low stress work which exists in the national economy.

For these reasons, the Court will grant the Motion for Summary Judgment filed by the Commissioner and deny the Motion for Summary Judgement filed by Plaintiff.

An appropriate Order follows.


McVerry, J.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

CRYSTAL L. MONTGOMERY,          )
                                )
              Plaintiff,         )
                                )
        v.                       )          02: 05cv0821
                                )
JO ANNE B. BARNHART,             )
Commissioner of Social Security, )
                                )
              Defendant.         )

**ORDER OF COURT**

    **AND NOW**, this 25th day of May, 2006, it is hereby **ORDERED, ADJUDGED, AND**

**DECREED** that:

    1.    The Motion for Summary Judgment filed by Defendant, Jo Anne B. Barnhart,

        Commissioner of Social Security (*Document No. 6*) is **GRANTED**;

    2.    The Motion for Summary Judgment filed by Plaintiff, Crystal L. Montgomery

        (*Document No. 8*) is **DENIED**; and

    3.    The clerk shall docket this case closed.

                        BY THE COURT:

                        /s Terrence F. McVerry
                        United States District Court Judge

cc:    Christine M. Nebel, Esquire
        Email: cnebel220@aol.com

        Lee Karl,
        Assistant U.S. Attorney
        Email: lee.karl@usdoj.gov